BRAY, P. J.
 

 Petition for writ of prohibition, mandate or other appropriate relief.
 

 Questions Presented
 

 1. Is showing of “good cause’’ an issue here? No.
 

 2. Is a report and statements of employees concerning an accident on the employer’s premises, sent, pursuant to the terms of an insurance policy, to the employer’s insurance carrier, privileged? Yes.
 

 
 *367
 
 3. Was the purpose for which the statements were made adequately shown ? Yes.
 

 Record
 

 Alma Quinn, real party in interest, hereinafter called plaintiff, filed an action against petitioner Gene Compton’s Corporation for damages for personal injuries alleged to have been received when plaintiff fell on a stairway at one of petitioner’s restaurants. She filed in said action interrogatories (pursuant to Code Civ. Proe., § 2030) requesting petitioner, among other requests, to attach copies of all statements taken from employees who were employees of petitioner on the date of the accident, and copies of all reports made and all information gathered by petitioner or its agents. Petitioner filed objections. Further proceedings were had in which affidavits were filed and the motion was heard. The court offered petitioner the opportunity to submit to the court copies of the requested report and statements “for delivery over to plaintiff’s attorney of such portions thereof as the Court upon inspection should feel plaintiff entitled to. . . .” Petitioner declined to take advantage of such offer. On October 30, 1961, the court ordered petitioner to provide plaintiff with (1) “First Report of Accident,” filed by Walter C. Smith, petitioner’s manager at the location of the accident; (2) two signed statements each dated December 2,1960, one signed by said manager, the other signed by an employee on duty at the restaurant at the time of the accident.
 

 According to the record, after the order was made, plaintiff filed a notice of motion for an order to inspect the above-mentioned communications. It was thereafter stipulated by the parties that certain affidavits filed after the determination by the trial court could be considered as having been before the trial court, and should be considered by this court. Petitioner withdrew from consideration objection as to the
 
 “form
 
 of Interrogatory No. 7; i.e., it is agreed that the motion may be considered as one for the production of said two statements and said one report.” Apparently the parties desire this proceeding to be considered as a proceeding to inspect documents as provided in section 2031, Code of Civil Procedure, and to treat said order as having been made pursuant to that section and after consideration of all the affidavits hereafter discussed.
 

 1.
 
 Good Cause.
 

 Petitioner contends that no “good cause” was shown
 
 *368
 
 for disclosure. Plaintiff contends that, petitioner, by its stipulation withdrawing objection as to the form of interrogatory No. 7 is foreclosed from raising this issue. Interrogatory No. 7 asked for copies of all statements and reports taken from persons employed at the restaurant on the day of the accident. Petitioner’s written objections to this interrogatory were that it was not an interrogatory in fact but a demand for production of documents which is dealt with exclusively by section 2031, Code of Civil Procedure, and that this code section required an identification of the documents and a showing of good cause. However, whether the said stipulation did or did not waive petitioner’s original objection that good cause was not shown by plaintiff, the actions of the parties clearly indicate that good cause was not to be an issue in this court. The matter was brought here upon the stipulation of the parties that affidavits filed after the making of the order be considered by this court. It is apparent that, likewise, the later motion to inspect is to be deemed to have been before the court, and is before this court. No opportunity was given to plaintiff to show good cause on such motion. All of these matters constrain us to hold that good cause is not an issue here.
 

 Moreover, the language in
 
 Greyhound Corp.
 
 v.
 
 Superior Court
 
 (1961) 56 Cal.2d 355, 389 [15 Cal.Rptr. 90, 364 P.2d 266], indicates that the court felt that in a situation comparable to this, it would be better, in the interest of an efficient and expeditious disposition of the main question involved, to consider the merits of the problem now rather than to cause the parties to start all over and have the problem again brought before the appellate court.
 

 ■ This brings us to the merits.
 

 2.
 
 The Report and Statements Are Privileged.
 

 The affidavit of K. C. Farnsworth states that he is casualty claims manager for Rathbone, King and Seeley, which firm is the general agent and underwriting manager of Royal Exchange Assurance Co., the liability insurance carrier for petitioner, and as such handles all the underwriting and claims on behalf of said Royal Exchange; that he is “in charge of the investigation and defense, the selection of attorneys, and the general claims handling in the case of
 
 Alma Quinn
 
 v.
 
 Gene Compton’s Corp.” ;•
 
 that petitioner’s insurance policy requires Royal to defend petitioner against claims and lawsuits arising out of, among other things, personal injuries.
 
 *369
 
 The policy gives Royal the right to make investigations, to prepare defenses to claims and suits, and to have the sole and exclusive charge of and conduct on behalf of the assured, all such investigations and defenses. The policy requires petitioner to cooperate with Royal in making accident reports to Royal through petitioner’s managers and employees. The policy permits Royal the sole determination of the attorneys it will select
 
 in the
 
 defense of any claim.
 

 The only statements which Royal has are: (a) A “Report of Accident (Not Automobile) Comprehensive Liability” filled out by Walter C. Smith, petitioner’s manager at the location where the accident occurred. This report is on a form furnished by Rathbone, King and Seeley to Royal’s various assureds for the report of any accident likely to lead to a claim or lawsuit. It is affiant’s experience and that of the brokers that virtually any personal injury may be the basis of a claim being made, whether such claim has merit or not. “The purpose of such report is so that . . . [Royal] will have early notice of the accident, and so that it may take prompt steps to investigate the same.” The accident report was dated November 19, 1960 (the accident occurred November 18 at 9:15 p. m.). The report contains the name and address of the person injured (the plaintiff), the nature and extent of her injury, and a general description, so far as known to the assured, as to how the accident happened. The report was sent to Maurice A. Gale and Co., petitioner’s insurance brokers, who placed petitioner’s liability insurance in Royal through Rathbone, King and Seeley. It was then forwarded to the latter concern and came to affiant’s attention November 29. The report was enclosed with a letter from Gale and Co., and also a letter from John R. Golden, Esq., plaintiff’s attorney, dated November 22, which was addressed to petitioner and had been forwarded by petitioner to Gale and Co., stating that Golden represented plaintiff herein and requesting the name of petitioner’s insurance carrier so that Golden could take up plaintiff’s claim directly. It being apparent that a claim was being made, affiant assigned an adjuster to obtain a statement of all facts known to petitioner and any of its employees.
 

 (b) Two signed statements obtained by the adjuster, each dated December 2, one signed by the manager of the restaurant where the accident occurred, and another signed by an employee on duty then and there. These statements describe what is known to the makers regarding the accident.
 

 
 *370
 
 The statements described in paragraphs (a) and (b) “were obtained for the sole purpose of being transmitted as a communication to the attorney designated by me, in the performance of his professional responsibilities in defending . .. [petitioner] against plaintiff’s claim.” Affiant on August 23, 1961, after petitioner had been served with summons in this action on August 17, transmitted them to Attorney Hughes for the defense of plaintiff’s claim. They “set forth the assured’s version of how the accident to the plaintiff happened.” The only other reports affiant has, are reports with respect to said claim, from the adjuster to Eathbone, King and Seeley.
 

 Attorney Hughes filed an affidavit stating that the only statements of witnesses he has are as set forth in paragraphs (a) and (b) above mentioned. In another statement he stated he was employed August 24, 1961, to defend this action.
 

 Other affidavits filed after the order was made will hereinafter be detailed. They state that the communications above mentioned were intended to be confidential and were made for the purpose of being transmitted, and were transmitted to petitioner’s insurance carrier, to be delivered to the attorney whom the carrier would select if litigation resulted from the accident.
 

 It will be noted that the report (a) was made to the insurance brokers, and the statements (b) were given to the insurance adjuster, none to the employer, and all some eight or nine months before litigation commenced and before the selection of an attorney to represent petitioner.
 

 These facts squarely present the question: Are the report of the insured’s manager and his statement and that of another employee concerning an accident on the insured’s premises prepared for submission and submitted to the insurance carrier for transfer to an attorney to be appointed by the carrier to represent the insured in the event of litigation, privileged ? It is conceded that the material demanded is discoverable, unless only it is protected by the privilege rule.
 

 In
 
 Greyhound, supra,
 
 which is the Bible so far as it goes, as to the new discovery statutes in California, the court stated that the new system liberalized discovery “as to person, scope, and situation,” (p. 375) “to take the ‘game’ element out of” discovery (p. 376) but that “it was not intended to adversely affect the general adversary nature of litigation under our system of law.” (P. 376.) “In order to accomplish the various legislative purposes set forth above, the several statutes must be construed liberally in favor of disclosure unless the
 
 *371
 
 request is clearly improper by virtue of well-established causes for denial.” (P.377.)
 

 In
 
 Greyhound,
 
 the plaintiff was injured in a collision between the automobile in which the plaintiff was riding and a Greyhound bus. At the time and scene of the accident Greyhound adjusters and investigators obtained signed statements from various witnesses of the accident, including the bus passengers. These statements, it was contended, were obtained “ ‘for the sole purpose of acquiring information regarding said accident to be transmitted to its attorneys ... in preparing to defend against any claims arising out of the accident,’ ” (p. 387) and that such statements were transmitted to Greyhound’s attorneys in confidence for such purpose. It was contended that the statements came within the attorney-client privilege. The court first quoted from section 2016: “ ‘. . . All matters which are privileged against disclosure upon the trial under the law of this State are privileged against disclosure through any discovery procedure. . . .’ ” After considering a number of authorities on the attorney-client privilege relationship, the court held (pp. 397-398) : “The witnesses, whose statements petitioner has been ordered to disclose for inspection, did not intend their remarks to be confidential, and they were not in any sense parties to an attorney-client relationship. To attach privilege to the facts and matters which they voluntarily divulged to petitioner’s investigators would run contra to the rule expressed in
 
 Chronicle Pub. Co.
 
 v.
 
 Superior Court, supra,
 
 54 Cal.2d 548 [7 Cal.Rptr. 109, 354 P.2d 637], at p. 565: ‘ “. . . no new or common law privilege can be recognized in the absence of express statutory provision. . . .” ’ ”
 

 The court then discussed
 
 Holm
 
 v.
 
 Superior Court
 
 (1954) 42 Cal.2d 500 [267 P.2d 1025, 268 P.2d 722], stating that that case dealt with three specific pieces of material, all of which were included in the report which the defendant there submitted to its attorney in confidence. It pointed out that a photograph of the scene of the accident taken by the defendant’s investigators and the defendant’s “driver’s own report, including his version of the accident, alleged to have been intended as a confidential report to his employer’s attorney” (p. 398) were held to be privileged and that a statement made by the plaintiff to the defendant’s bus driver was not. Apparently
 
 Greyhound
 
 approved of the
 
 Holm
 
 holding that the bus driver’s own report was privileged for the court said in a
 
 *372
 
 footnote (pp. 398-399): “The opinion expressly recognized that the driver’s statement, containing his version of the accident, would not have been privileged had it been made in the regular course of business as a report to his superiors for the purpose of studying methods of accident prevention or other administrative matters. The
 
 Holm
 
 doctrine thus makes a factual distinction between reports of the participants on the basis of whether they are made for the sole purpose of ■trial preparation. In both the
 
 Holm
 
 case and the instant proceeding there were conflicting contentions as to the original purpose of the report.
 
 ’
 

 [1]
 

 In
 
 Holm
 
 the bus in which the plaintiff was alleged to have been injured belonged to San Francisco’s Municipal Railway. According to the affidavit of a deputy city attorney and the railway’s general claims agent, the bus driver’s written reports “had been kept in confidence in the possession or control of one of them since they were made; . .. they were in the possession of the attorney at the time of the demand for their production; . . . they were secured and kept in confidence for use by the attorneys for information and aid in defending in any litigation arising out of the accident. ...” (Pp. 504-505.) It was claimed and the court held that they were protected by the attorney-client privilege.
 

 Concerning the attorney-client privilege the court said (pp. 506-507): “The right to maintain the security of a confidential communication under the attorney-client privilege is set forth in section 1881 of the Code of Civil Procedure which states in part: ‘ There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person can not be examined as a witness in the following cases ... 2.
 
 Attorney and Client.
 
 An attorney can not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of profesional employment .. .’ (See also Bus. & Prof. Code, § 6068, subd. (e).) Where the right to assert the privilege is clear it should follow that the bill of discovery cannot be used to defeat it.
 

 
 *373
 
 “The objective of making a particular communication privileged is to encourage a client to make a complete disclosure to his attorney without fear that others may also be informed. [Citations.] The privilege attaches where the communication is made in confidence pursuant to a client-attorney relationship with respect to the particular matter. [Citation.] Thus there would seem to be no privilege in a communication which is not made to or for further communication to an attorney, although the communication might have some connection with possible liability in the future, such as reports submitted in the regular course of busines for study in accident prevention. Nor does the privilege attach to a communication not intended to be of a confidential nature. [Citations.] To make the communication privileged the dominant purpose must be for transmittal to an attorney ‘in the course of professional employment. ’ [ Citations. ]
 

 “In any given situation it is necessary that a determination be made concerning the facts asserted as a basis for the privilege. This determination is for the trial court in the first instance. Where it is clear that the communication has but a single purpose, there is little difficulty in concluding that the privilege should be applied or withheld accordingly. If it appears that the communication is to serve a dual purpose, one for transmittal to an attorney ‘in the course of professional employment’ and one not related to that purpose, the question presented to the trial court is as to which purpose predominates. The question then is whether the conclusion of the trial court on the facts is correct or has resulted in an abuse of discretion. ’ ’
 

 The court further stated: “ ‘It is no less the client’s communication to the attorney when it is given by the client to an agent for transmission to the attorney, and it is immaterial whether the agent is the agent of the attorney, the client, or both. “ [T]he client’s freedom of communication requires a liberty of employing other means than his own personal action. The privilege of confidence would be a vain one unless its exercise could be thus delegated. A communication, then,
 
 by any form of agency
 
 employed or set in motion by the client is within the privilege ...[”] (8 Wigmore,
 
 supra,
 
 §2317, pp. 616-617. . . .) ’ It follows that where the communication is between corporate employees and is embodied in reports or photographic evidence for the purpose of redelivery to a corporate attorney the privilege attaches if the reports and
 
 *374
 
 photographs were created as a means of communicating confidential information to the attorney.
 

 “. . . As previously stated, the affidavits of the petitioners in the trial court revealed that the documents were prepared as confidential communications to the city attorney in threat of litigation and that the documents had at all times been treated as such. These affidavits were uncontradicted as to the purpose of the documents. In this connection the plaintiff asserts only that they were prepared in the regular course of business. But there is no valid basis for a distinction between a communication created for transmittal to an attorney to prepare for threatened litigation following particular accidents, and a communication prepared for an identical purpose under standing rules in the case of all accidents involving personal or property injury. Because the scope of the operations of the defendant city’s municipal railway is such as to require communications of this nature as a routine matter, it cannot be said that the attorney-client privilege did not attach.
 

 “In any action for damages such as the pending one it is of considerable importance to obtain all information available at the scene of the accident in order to safeguard the rights of the party likely to be charged with negligence. It is because of this fact that diligence is required in behalf of such party to avoid or prepare for litigation. In view of the imminent possibility that the city would be faced with a claim involving substantial liability for personal injuries far exceeding financial considerations in any other respect, it is unreasonable and unrealistic to say that the communication of the documentary information to the attorneys for use in their professional capacity was not foremost and predominately in the minds of those securing and transmitting the same.
 

 “. . . The fact that the information contained in the communications might also be used for incidental purposes not entitled to the privilege is unimportant.
 

 “The question of the application of section 1000 of the Code of Civil Procedure as affecting the attorney-client privilege appears not to have been decided by any California court. However, in an analogous situation in
 
 New York Cas. Co.
 
 v.
 
 Superior Court,
 
 30 Cal.App.2d 130 [85 P.2d 965], it was sought to perpetuate evidence under section 2083-2086 of the Code of Civil Procedure. The court held that confidential reports of an accident procured for the use of an insurance company’s attorney were protected by the attorney-client
 
 *375
 
 privilege. Section 1000 was not referred to but the court cited with approval two Ohio decisions that dealt with discovery procedures. [Citations.] Those cases dealt with an effort to obtain by
 
 subpoena duces tecum
 
 reports of an accident prepared by an insured for its insurer and insurer’s attorneys. The Ohio court held the communications to the insurer to be privileged.
 

 “Numerous decisions in other states have held that where confidential reports were submitted by agents of a corporation for transmittal to the corporate attorney, the privilege attached as against proceedings for discovery. (See cases compiled in 146 A.L.R. at 988.) In many of the cases it was emphasized that the crucial question is the purpose for which the communication originated. In
 
 Cully
 
 v.
 
 Northern P.R. Co.,
 
 35 Wash. 241 [77 P. 202], the court held that routine correspondence, reports and documents relating to the accidental injury of the plaintiff were privileged, the court stating: ‘We can conceive of no reason why a different rule should apply in this case than prevails in the case of privileged communications generally. ’ ’
 
 (Holm, supra,
 
 pp. 508-510; see also
 
 People
 
 ex rel.
 
 Dept. of Public Works
 
 v.
 
 Donovan
 
 (1962) 57 Cal.2d 346, 354 [19 Cal.Rptr. 473, 369 P.2d 1].)
 

 The main difference between the
 
 Holm
 
 case and ours is that there the reports went to the municipal railway’s attorneys, whereas in our ease, under requirement of the policy between the insurer and the insured, the reports went to the insurer for delivery to the attorney when selected by the insurer, in the event of litigation.
 
 [2]
 
 In
 
 Holm,
 
 as in our case, no litigation had been commenced at the time the reports were made. We can see, and apparently the court in
 
 Holm
 
 could see, no basis for a distinction between a report for the attorneys of the municipal railway to be used by them if litigation ensued, and a report to be held for attorneys selected by the insurer if litigation ensues. Under the
 
 Holm
 
 ease it is the purpose for which the report is to be used, rather than the particular status of the litigation or the attorneys who are to receive it.
 

 It is interesting to note that Mr. Justice Traynor in his concurring and dissenting opinion and Mr. Justice Carter in his dissenting opinion, in
 
 Holm,
 
 concede the principle that a report of an employee prepared for the use of the employer’s
 
 *376
 
 attorney is a privileged communication, although they were of the opinion that in that ease such was not the dominant purpose of the reports.
 

 In
 
 New York Cas. Co.
 
 v.
 
 Superior Court
 
 (1938) 30 Cal.App.2d 130 [85 P.2d 965], referred to with approval in
 
 Holm,
 
 page 509, one Burford obtained judgment against one Juett and one Huesby for injuries sustained by him in a collision with an automobile owned by Juett and operated by Huesby. Juett held a public liability insurance policy issued by the New York Casualty Company. Burford then sued the company on the Huesby judgment which had become final. Juett had appealed. The facts necessary to be proved were the circumstances relating to the use of the automobile by Huesby. Bur-ford sought to perpetuate the testimony of an officer of the insurance company. In connection with his examination, the trial court ordered him to produce “its confidential reports and investigation of the accident.” (P. 132.) In reversing the trial court, the reviewing court stated: “These documents are just as much privileged when in the possession of the attorney for the insurer as is the information which the attorney for the plaintiff obtains from his client in the presentation of his ease. In a closely similar case this question was covered in
 
 In re Klemann,
 
 132 Ohio St. 187 [5 N.E.2d 492, 494, 495, 108 A.L.R 505], where the Ohio court says: ‘In order for a document to constitute a privileged communication, it is essential that it be brought into being primarily as a communication to the attorney. . . . The report thus required, when furnished, becomes the property of the insurance company, and when the original or copy thereof is transmitted by the insurance company, either directly or through an agent, to its attorney, on the authority of
 
 Ex parte Schoepf,
 
 74 Ohio St. 1 [77 N.E. 276, 6 L.R.A. N.S. 325], it constitutes a communication from client to attorney, and, as such, it is protected as a privileged communication under section 11494, General Code, and its production and disclosure cannot be compelled by
 
 subpoena duces tecum. ’
 

 “Section 11494 of the Ohio General Code, upon which the decision is based, is almost identical with section 1881, subdivision 2 of our Code of Civil Procedure which reads: ‘An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment. . . .’ ” (Pp. 132-133.)
 

 While the time when the reports were made is not expressed
 
 *377
 
 in the opinion, it is obvious that they must have been made about the time of the accident and long prior to the action against Huesby and Juett and the later action against the insurance company.
 

 The contention is made that because of the language in
 
 Greyhound,
 
 “We are therefore inclined to the view that the work product privilege does not exist in this state” (p. 401), a philosophy is there stated which would hold the statements in question here as not privileged. However, such contention is a non sequitur. In its discussion in
 
 Greyhound
 
 of the work product rule, the court was considering whether our Legislature, in enacting the new discovery statutes, intended to liberalize the work product rule laid down by the United States Supreme Court in
 
 Hickman
 
 v.
 
 Taylor,
 
 329 U.S. 495 [67 S.Ct. 385, 91 L.Ed. 451]. There, the trial court ordered the defense counsel to submit to the plaintiff the written statements and the substance of oral statements received by defense counsel from independent witnesses, and to submit to the court counsel’s memoranda for determination as to what should be available therein to the plaintiff. The United States Supreme Court held that the statements of the independent witnesses were not privileged. But it then went on to hold that the material ordered to be discovered “falls outside the arena of discovery and contravenes the public policy underlying the orderly prosecution and defense of legal claims.” (P. 510.) The court in
 
 Greyhound,
 
 then, in the quoted statement was not considering privilege at all, other than to hold that our Legislature had in effect restricted the refusal of discovery to privileged material only, but merely the determination that our Legislature was liberalizing the rule which
 
 Hickman
 
 restricted because of public policy. The philosophy of the California Supreme Court as to statements of employees for use of the employer’s attorneys is demonstrated in
 
 Greyhound
 
 by the fact that the court apparently approved the holding in
 
 Holm
 
 that the statement of the bus driver made for delivery to the employer’s attorney was privileged.
 

 Another distinction between
 
 Holm
 
 and the instant case is that the bus driver whose statement was held privileged was a party to the litigation.
 
 Holm
 
 decided flatly that the communication was that of an employee to the employer’s attorney, and as such, privileged, and in
 
 Greyhound
 
 it was so regarded.
 

 In
 
 Heffron
 
 v.
 
 Los Angeles Transit Lines
 
 (1959) 170 Cal.App.2d 709 [339 P.2d 567], the situation was similar to that
 
 *378
 
 here. An action was brought for damages for the death of a child struck by one of the defendant’s buses. At the trial the bus driver testified that after the accident he had made a report pursuant to the company’s rules. The plaintiff then moved to examine the statement. The defendant objected upon the ground that it was privileged. Affidavits disclosed an agreement between the transit company and its insurance carrier almost identical with the agreement between petitioner and its carrier here. The carrier agreed to defend the transit company against claims and lawsuits arising from accidents, and was given the right to make investigations for the purpose of enabling it to prepare defenses to such claims and suits. The transit company was required to cooperate with the carrier in securing witnesses, obtaining statements, etc. The transit company had learned from experience that each accident in which an injury occurred is a potential lawsuit, for which reason the carrier, motivated primarily by its desire to properly prepare a defense for possible litigation, required that all witnesses’ statements be transmitted to attorneys of the carrier and retained by the attorney who would be selected to defend the litigation. The requirement that operators of buses and street cars secure names and addresses of witnesses where possible had been adopted by the carrier in order that said purpose might be fulfilled. The bus driver made his report in triplicate; two copies of the report went to the transit company’s statistical department and were destroyed after statistical data was taken therefrom. The third copy went to the attorneys for the carrier for use in preparing for the defense of “litigation pending or in prospect.” (P. 717.) The court stated, “. . . there can be no question but that the affidavits set forth facts more than sufficient to support the trial court’s implied finding that respondent’s dominant purpose in obtaining and preserving the driver’s statement was that it might be transmitted as a communication to the attorneys designated by its insurance carrier for use in the performance of professional responsibilities in defending respondent against a potential claim.
 
 (Holm
 
 v.
 
 Superior Court, supra,
 
 42 Cal.2d 500, 509; see also
 
 Jessup
 
 v.
 
 Superior Court,
 
 151 Cal.App.2d 102, 109 [311 P.2d 177];
 
 Union Oil Co.
 
 v.
 
 Superior Court, supra,
 
 151 Cal.App.2d 286, 292 [311 P.2d 640].) The driver’s statement evidently set forth ‘. . . his version of the accident and thus clearly is at the very heart of the attorney-client privilege.’
 
 (City & County of San Francisco
 
 v.
 
 Superior Court, supra,
 
 161 Cal.App.2d 653, 656 [327 P.2d 195].) Although the point has not been raised on this appeal, it may
 
 *379
 
 be observed that in such circumstances as are here involved the transmission of a privileged communication to the attorney through the agency of an insurance carrier does not destroy the privilege. The prevailing rule has been stated as follows : ‘According to the weight of authority, a report or other communication made by an insured to his liability insurance company, concerning an event which may be made the basis of a claim against him covered by the policy, is a privileged communication, as being between attorney and client, if the policy requires the company to defend him through its attorney, and the communication is intended for the information or assistance of the attorney in so defending him.’ (Anno. 22 A.L.R.2d 659, 660; 58 Am.Jur. 282, § 503, and 279, § 498; and see
 
 City & County of San Francisco
 
 v.
 
 Superior Court,
 
 37 Cal.2d 227, 236-237 [231 P.2d 26, 25 A.L.R.2d 1418].) ” (Pp. 717-718.)
 

 In
 
 Heffron
 
 the evidence showed that the driver’s statement had two purposes, one for the statistical department of his employer, the transit company, and one for the insurance carrier’s attorneys, and yet the court held that as the latter purpose was the predominant one, the statement was privileged. In our case, notwithstanding that in Smith’s first report he stated that the purpose of the report was so that the insurance company would have early notice of the accident so that it might take prompt steps to investigate it (this statement is not contradictory of the fact that the investigation is for the attorney’s preparation of a defense in case of litigation), the situation is stronger in favor of privilege as no purpose is shown for the employee’s statements or the manager’s report other than their use in potential litigation.
 

 This doctrine, that statements and reports to insurance companies for attorneys to be selected in the event of litigation, appears to have been developed by a series of Ohio cases based on the
 
 contract
 
 between insured and insurer for defense in case of any possible litigation. (See 22 A.L.R.2d p. 660, and 73 A.L.R.2d § 52, p. 135.)
 

 3.
 
 Purpose.
 

 “ In any given situation it is necessary that a determination be made concerning the facts asserted as a basis for the privilege. This determination is for the trial court in the first instance.”
 
 (Holm,
 
 p. 507.) In
 
 Safeway Stores, Inc.
 
 v.
 
 Superior Court
 
 (1961) 193 Cal.App.2d 270 [14 Cal.Rptr. 243], we pointed out that the burden of establishing that the predominant purpose for which the statements were given was
 
 *380
 
 for transmittal to the attorney for defense purposes was upon the one asserting the privilege. There we held that the employer had not met that burden. What is the situation in this respect in our case? Here we have a most peculiar situation evidence-wise. At the time the court made its order, it had before it only the affidavit of Farnsworth, hereinbefore mentioned, plus the affidavit of Hughes that the only statements he had concerning the accident were those transmitted to him by Farnsworth. The Farnsworth affidavit gave the history of the report being sent first to petitioner’s insurance brokers who forwarded it to Bathbone, King and Seeley, the general agent of Boyal, and then, after the litigation commenced turned over by Farnsworth to Hughes, the attorney selected by him to defend petitioner in the litigation. The two signed statements were obtained by an adjuster assigned by Farnsworth and likewise so delivered by him to Attorney Hughes.
 

 Thus there was no contradiction of the facts concerning the purpose of the report and the statements or the path of their delivery ultimately to the attorney afterwards selected to defend the litigation. It is clear, therefore, that the trial court’s ruling was not based upon any conflict in the evidence, but solely upon the erroneous determination of the question of law as to whether a report and statements of employees made for the purpose of being delivered, and delivered to the insurer for ultimate use by the attorney when selected to defend the insured after litigation ensues, are privileged.
 

 Nor was the situation in this respect changed by the stipulation made after the order, in which the parties stipulated that it be deemed that five additional affidavits were before the trial court and now are before this court. The first is that of petitioner’s assistant secretary in which he swears that petitioner knows that any injury occurring on its property is likely to be the basis for a claim and litigation, and that petitioner “transmits to its said insurer the same information that it would transmit to its own legal staff were it not insured.” This information consists of a first report of accident and a detailed signed statement of the manager and any other employee who has any knowledge of the incident. “This information is intended to be confidential for the use of the attorneys selected by the insurer if litigation is instituted.” The report and statements in this matter “all were intended to be confidential communications to the attorney who would be called upon to defend this claim, when, as, and if litigation
 
 *381
 
 were instituted.” The second affidavit is that of the manager of the restaurant where the accident occurred. He swears that he made the report of the accident. It was sent to petitioner’s insurance broker for transmission to petitioner’s insurance carrier. Later an adjuster came to the restaurant and affiant gave him “a detailed signed statement of all I know about the incident. . . . Both the report and the signed statement were intended to be confidential communications to the attorney selected by the insurance company for the defense of my employer.” The third is the affidavit of an employee at the restaurant. He states that he made a detailed statement about the incident “to an insurance adjuster of my employer’s insurance company. This statement was intended to be a confidential communication to the attorney selected by the insurance company for the defense of my employer.” The fourth was another affidavit by Attorney Hughes. He states that the firm of which he is a member was retained on August 24, 1961, by petitioner’s insurer to defend this action. The fifth is an unsworn “declaration” by plaintiff’s attorney, in which he declared that the report and statements were not statements made by a client to his attorney or to an agent for transmission to the attorney for the manager or other employee and that the portions of the report and statements plaintiff desired to see consist of nonprivileged matter. He pointed out that the litigation had not been started nor the attorney to represent petitioner in it designated, at the time of making the report and statements, and that therefore he believed that they were not intended to be confidential communications within the meaning of subdivision 2, section 1881, Code of Civil Procedure.
 

 Plaintiff’s attorney’s declaration that he does not believe that the report and statements were not intended to be confidential communications does not constitute a refutation of the fact that the communications
 
 were intended
 
 to be confidential. The additional affidavits raise no conflict in the evidence as to the purpose and method of transmittal of the communications. Thus, the question before us is one of law on undisputed facts.
 

 Let the peremptory writ issue prohibiting respondent court from giving effect to its order requiring petitioner to provide plaintiff with the report and statements herein described.
 

 Sullivan, J., and Conley, J.,
 
 *
 
 concurred.
 

 [1]
 

 In
 
 Greyhound,
 
 the court in a footnote, page 398, in discussing statements taken from nonemployee eyewitnesses, stated that the court did not deem it necessary to pass upon the privileged nature of these communications as affected hy the fact that the attorney-client relationship did not exist at the time the information was gathered. This statement, however, does not detract from the apparent recognition of the
 
 Holm
 
 determination that employee communications for use of the employer’s attorney prior to any litigation are privileged.
 

 [2]
 

 Another distinction is that in
 
 Holm
 
 the attorneys who would represent the municipal railway in. the event of litigation were already selected, and thus the attorney-client relationship had already commenced. In our ease this relationship was later to commence.
 

 *
 

 Assigned by Chairman of Judicial Council.