OPINION
 

 BURKE, Justice.
 

 In this appeal, petitioners Joanne and Ronald Langdon (Langdon) ask us to reverse an order of the superior court denying their motion to compel production of respondent Champion’s insurance adjustors’
 
 [1]
 
 investigative reports and files (files). Most, if not all, of the materials sought were compiled prior to commencement of suit and involvement of an attorney for Champion. The question we must resolve, therefore, is whether information in an insurance adjustor’s files, prepared or obtained prior to any active participation of counsel, is protected from discovery by either the attorney-client privilege or the work product doctrine.
 

 We conclude that statements made by an insured to an insurer are not protected by the attorney-client privilege unless it can be
 
 *1001
 
 shown that the insurer, in receiving such communications, was acting at the express direction of counsel for the insured. Similarly, we conclude that materials contained in an insurer’s files shall be presumed to have been compiled in the ordinary course of business, and, thus, outside the scope of the work product doctrine, absent a showing that the materials were prepared at the request or under the supervision of the insured’s attorney.
 

 I
 

 BACKGROUND
 

 The action below was a personal injury suit filed by Langdon against Champion on July 9, 1986. The facts material to the issue presented here are not in dispute.
 

 The alleged tort occurred on November 26, 1984. Champion’s insurance company, State Farm, and its adjustor, Mr. Ron Lee, became aware of Langdon’s claims as early as September 9, 1985. On September 11, 1985, Champion gave a recorded statement to his insurance adjustor. This statement was transcribed on August 12,1986. Actual correspondence between Langdon’s attorney and Mr. Lee commenced on October 23, 1985, and continued until Langdon filed her complaint. The case was assigned to defense counsel by letter dated July 16, 1986.
 

 On July 21, 1986, Langdon made a Request for Production of any recorded or written statements by Champion, investigative reports, including those of the insurance adjustor, and the complete insurance adjustor’s file. Champion objected to production based upon the attorney-client privilege and the work product doctrine. Lang-don then filed a Motion to Compel Production which superior court judge Milton M. Souter denied without comment, citing Civil Rule 26(b)(3). We granted Langdon’s petition for review of this order.
 

 II
 

 STANDARD OF REVIEW
 

 The issue whether an insurance adjustor’s reports and files are protected by the attorney-client privilege or the work product doctrine is a question of law. The standard of review on issues of law is
 
 de novo
 
 or independent judgment.
 
 Walsh v. Emerick,
 
 611 P.2d 28, 30 (Alaska 1980). Under this standard, it is our duty “to adopt the rule of law that is most persuasive in light of precedent, reason and policy.”
 
 Brooks v. Brooks,
 
 733 P.2d 1044, 1055 (Alaska 1987) (quoting
 
 Guin v. Ha,
 
 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).
 

 III
 

 ATTORNEY-CLIENT PRIVILEGE
 

 Under the general rule, Langdon is entitled to discover any relevant, unprivileged information. Alaska R.Civ.P. 26(b)(1).
 
 [2]
 
 The first issue we must resolve, then, is whether statements made by an insured to his insurer
 
 [3]
 
 are protected from discovery by the attorney-client privilege.
 

 The attorney-client privilege allows a client to refuse to disclose, and to prevent others from disclosing, confidential communications between the client and his attorney or the attorney’s representative, or between the client and the client’s representative, made for the purpose of facilitating the rendition of legal services to the client. Alaska R.Evid. 503(b).
 
 [4]
 
 A representative
 
 *1002
 
 of the lawyer is one employed to assist the lawyer in rendering legal services; a representative of the client is one having authority to obtain legal services and act on legal advice on behalf of the client. Alaska R.Evid. 503(a)(2) and (4).
 
 [5]
 
 Determination of the privilege issue in the present context will necessarily turn upon whether a client’s insurance adjustor may properly be considered a representative of the client or his attorney within the meaning of these provisions.
 

 We begin by concluding that an insurer is not a “representative” of the client within the meaning of Evidence Rule 503(a)(2). Although, at first glance, an insurer would appear to fall within the definition of a claimant’s representative, the commentary to Rule 503(a)(2) clearly suggests otherwise. That commentary indicates that the definition of a client's representative was included in the Rules solely as a means by which to adopt the “control group” test governing assertion of the attorney-client privilege by corporate clients. There is no indication that the definition was intended to extend the protection of the privilege to communications made to third parties such as insurers.
 

 Whether an insurer is a representative of the attorney within the meaning of Evidence Rule 503(a)(4), however, is a closer question. We have never squarely decided this issue,
 
 [6]
 
 and those jurisdictions which have considered it are sharply divided.
 

 A shrinking majority of states prohibit discovery of statements made by an insured to his insurer. Most of these courts base their decision on provisions in the insurance policy which require the insurer to defend the insured and the insured to cooperate in the investigation.
 
 See, e.g., Gene Compton’s Corp. v. Superior Court,
 
 205 Cal.App.2d 365, 23 Cal.Rptr. 250, 252-56 (1962);
 
 Grand Union Co. v. Patrick,
 
 247 So.2d 474, 475 (Fla.App.1971);
 
 People v. Ryan,
 
 30 Ill.2d 456, 197 N.E.2d 15, 17-18 (1964);
 
 Asbury v. Beerbower,
 
 589 S.W.2d 216, 217 (Ky.1979);
 
 State ex rel Cain v. Barker,
 
 540 S.W.2d 50, 53-54 (Mo.1976);
 
 Brakhage v. Graff,
 
 190 Neb. 53, 206 N.W.2d 45, 47-48 (1973);
 
 Thomas v. Harrison,
 
 634 P.2d 328, 334 (Wyo.1981).
 
 See generally
 
 Annotation,
 
 Privilege of Communications or Reports Between Liability or Indemnity Insurer and Insured,
 
 22 A.L.R.2d 659, 660-62 (1952).
 

 These courts reason that because the insured has delegated the conduct of the defense to the insurance company, “the insured may properly assume that the communication is made to the insurer as an agent for the dominant purpose of transmitting it to an attorney for the protection of the interests of the insured.”
 
 [7]
 

 Ryan,
 
 197 N.E.2d at 17. These courts are also concerned that communication between the insured and the insurer would be inhibited or that the insured would be faced with the dilemma of either refusing to cooperate with his insurer in violation of his policy or face possible civil or criminal exposure if the communication was disclosed.
 
 E.g., State ex rel. Cain,
 
 540 S.W.2d at 56-57;
 
 *1003
 

 see also Thomas,
 
 634 P.2d at 334;
 
 Kandel v. Tocher,
 
 22 A.D.2d 513, 256 N.Y.S.2d 898, 900 (1965) (characterizing liability insurance as “litigation insurance” and stressing desirability of encouraging complete candor between insured and insurer).
 

 A substantial and growing minority of state courts, on the other hand, have concluded that statements made to an insurer by the insured are generally not protected by the attorney-client privilege.
 
 Longs Drug Stores v. Howe,
 
 134 Ariz. 424, 657 P.2d 412, 415-16 (1983);
 
 Butler v. Doyle,
 
 112 Ariz. 522, 544 P.2d 204, 207 (1975);
 
 Conley v. Graybeal, 315
 
 A.2d 609, 610 (Del.Super.1974);
 
 DiCenzo v. Izawa,
 
 723 P.2d 171, 176-78 (Haw.1986);
 
 Alseike v. Miller,
 
 196 Kan. 547, 412 P.2d 1007, 1017 (1966);
 
 Jacobi v. Podevels,
 
 23 Wis.2d 152, 127 N.W.2d 73, 75-76 (1964). The federal rule is likewise.
 
 E.g., Rogers v. Aetna Casualty & Surety,
 
 601 F.2d 840, 845 (5th Cir.1979);
 
 Jackson v. Kroblin Refrigerated Xpress,
 
 49 F.R.D. 134, 136-37 (N.D.W.Va.1970);
 
 Gottlieb v. Bresler,
 
 24 F.R.D. 371, 372 (D.D.C.1959);
 
 Kulich v. Murray,
 
 28 F.Supp. 675, 676 (S.D.N.Y.1939).
 

 Courts adopting this view reason that communications between insured and insurer are not in the same class as communications between client and attorney, because the insurer may use its information for purposes inimical to the interests of the insured.
 
 Butler,
 
 544 P.2d at 207;
 
 DiCenzo,
 
 723 P.2d at 177;
 
 Jacobi,
 
 127 N.W.2d at 76. In the words of the Wisconsin Supreme Court:
 

 When the insured makes ... a statement he is ordinarily fulfilling a condition of his policy, requiring him to notify the insurer of the occurrence and circumstances of the accident and to cooperate with the insurer. If the statement be false, the insurer may use it against the insured as foundation for a claim of noncooperation. If the statement discloses facts giving rise to some other defense against the insurer’s liability under the policy, the insurer is doubtless free to make use of those facts.
 

 Jacobi,
 
 127 N.W.2d at 76. Similarly, the Arizona court in
 
 Butler
 
 stated:
 

 The insurance carrier is more than a mere agent transmitting the policyholder’s statement to the attorney hired to defend the insured.
 

 The insurance carrier has the right to review and consider the statement submitted by the insured for any legitimate purpose connected with the business of the company. Coverage, cooperation, and renewal are a few of the matters, in addition to consideration of the potential claim, for which the insurer may use the statement of the insured. The use of the statement for a purpose adverse to the interest of the insured is certainly inconsistent with the claim of privilege upon his behalf.
 

 544 P.2d at 207.
 
 See also DiCenzo,
 
 723 P.2d at 177 (quoting
 
 Jacobi
 
 and
 
 Butler).
 
 These courts also emphasize that such statements are a routine part of any insurance investigation,
 
 [8]
 
 and express a grave concern about the advisability of making such statements immune from discovery as a matter of policy, for fear of either creating a new privilege (insured-insurer) or extending the attorney-client privilege beyond its intended reach.
 
 E.g., DiCenzo,
 
 723 P.2d at 177.
 

 We find the growing minority and federal rule most persuasive. In our opinion,
 
 *1004
 
 the cases according protection to statements between insurers and insureds have extended the attorney-client privilege into areas in which it was never intended to apply. Moreover, the minority rule is more in line with our policy favoring liberal discovery. As we have stated: “Given our commitment to liberal pre-trial discovery, it follows that the scope of the attorney-client privilege should be strictly construed in accordance with its purpose.”
 
 United Services Automobile Ass’n v. Werley,
 
 526 P.2d 28, 31 (Alaska 1974) (footnote omitted).
 
 See also Manville,
 
 642 P.2d at 1333 (quoting Werley). The purpose of the attorney-client privilege is “to promote the freedom of consultation of
 
 legal advisors
 
 by clients by removing the apprehension of
 
 compelled disclosure by the legal advis-ors." Werley,
 
 526 P.2d at 31 (emphasis added). The purpose of the attorney-client privilege is not served by extending its protection to statements made to insurers in the ordinary course of insurance investigations.
 

 We therefore hold that the attorney-client privilege does not extend to statements made by an insured to his insurer, except in those cases where it can be shown that the adjustor received the communication at the express direction of counsel for the insured. Only in the latter instance do we think it can fairly be said that the adjustor is acting as “one employed to assist the lawyer in the rendition of professional legal services,” thus making him a “representative of the lawyer” within the meaning of Evidence Rule 503(a)(4).
 

 In the case at bar, the statement Langdon seeks to discover was made nearly a year before the involvement of Champion’s attorney.
 
 [9]
 
 When Champion’s insurance adjustor took this statement, he was not acting at the direction of Champion’s attorney. Accordingly, Champion’s statement is not protected by the attorney-client privilege.
 

 IV
 

 WORK PRODUCT DOCTRINE
 

 The second question we must resolve is whether an insurer’s files are protected from discovery by the work product doctrine. Like the first issue, this, too, is a question of first impression.
 

 The “work product doctrine,” first recognized by the United States Supreme Court in
 
 Hickman v. Taylor,
 
 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947),
 
 [10]
 
 is part of Alaska’s Civil Rule 26(b)(3).
 
 See McKibben v. Mohawk Oil,
 
 667 P.2d 1223, 1231 (Alaska 1983) (the protection afforded by the work product doctrine is stated in Rule 26(b)).
 
 See also Upjohn Co. v. United States,
 
 449 U.S. 383, 401, 101 S.Ct. 677, 688, 66 L.Ed.2d 584, 598-99 (1981) (Federal R.Civ.P. 26(b)(3) codifies the principles of the “work product doctrine” first established in
 
 Hickman). See generally
 
 8 C. Wright & A. Miller,
 
 Federal Practice and Procedure
 
 § 2023, at 190-96 (1970) (hereinafter Wright & Miller).
 

 This doctrine provides an exception to the general rule contained in Civil Rule 26(b)(1), which allows discovery of any relevant, unprivileged information.
 
 [11]
 
 Under
 
 *1005
 
 Civil Rule 26(b)(3),
 
 [12]
 
 a party must show substantial need and undue hardship in order to obtain documents
 
 prepared in anticipation of litigation
 
 by another party or that party’s representative, “including his attorney, consultant, surety, indemnitor,
 
 insurer
 
 or agent.” (Emphasis added). Even where a showing of substantial need and undue hardship is made, the trial court is still required to protect against the disclosure of the mental impressions, conclusions, opinions, or legal theories of the party’s attorney or other representative concerning the litigation.
 
 Id.
 

 In order for materials to fall within the ambit of Civil Rule 26(b)(3) and, thus, qualify for “work product” protection, three requirements must be met. The material involved must be (1) a document or other tangible thing, (2) prepared in anticipation of litigation or for trial, and (3) prepared by or for the opposing party’s attorney or representative. Alaska R.Civ. P. 26(b)(3); Wright & Miller § 2024, at 196-97.
 
 See also
 
 4 J. Moore, J. Lucas & G. Grotheer,
 
 Moore’s Federal Practice
 
 1126.64[l]-.64[4], at 26-348 to 26-389. If these requirements are met, the party seeking discovery must then show substantial need and undue hardship before he will be entitled to such materials. Alaska R.Civ.P. 26(b)(3).
 

 We have not had occasion in the past to formulate rules or guidelines for determining when materials were prepared in “anticipation of litigation” and, thus, entitled to “work product” protection. In other jurisdictions, it seems generally accepted that materials prepared in the “ordinary course of business” are not prepared in anticipation of litigation and, thus, do not fall within the work product rule.
 
 E.g.,
 
 Wright & Miller § 2024, at 197-99. Beyond this, there is little agreement. Indeed, the cases are in considerable confusion, leading one commentator to observe:
 

 Courts have attempted to explain exactly what anticipation of litigation means, but such efforts have not helped to resolve the ... issue. For example, some courts indicate that a party ... anticipates litigation where there is a “substantial probability” of “imminent” litigation or when there is a “prospect” of litigation. Another requirement is that there be “some possibility” of litigation; however, a “mere possibility” of litigation is not enough. Other courts have stated that there must be an “eye” towards litigation or that litigation need only be a reasonable “contingency.” These methods for redefining the word anticipation do little more than say that litigation is anticipated when litigation is anticipated.
 

 Note,
 
 Work Product Discovery: A Multi-factor Approach to the Anticipation of Litigation Requirement in Federal Rule of Civil Procedure 26(b)(3),
 
 66 Iowa L.Rev. 1277, 1277-78 (1981) (footnotes omitted).
 
 Accord In re Grand Jury Investigation,
 
 599 F.2d 1224, 1229 (3d Cir.1979);
 
 Brown v. Superior Court,
 
 137 Ariz. 327, 670 P.2d 725, 732-33 (1983); Clermont,
 
 Surveying Work Product,
 
 68 Cornell L.Rev. 755, 755-56 (1982-83).
 

 Out of this quagmire two general positions have emerged. The majority of courts dealing with the problem have taken the position that litigation is not “anticipated” until the expectation of litigation is such that an attorney has become involved in the dispute and has prepared the documents himself or has requested their preparation.
 
 See McDougall v. Dunn,
 
 468 F.2d 468, 474-75 (4th Cir.1972);
 
 State Farm Fire & Casualty v. Perrigan,
 
 102
 
 *1006
 
 F.R.D. 235, 237-38 (W.D.Va.1984);
 
 American Banker’s Insurance v. Colorado Flying Academy,
 
 97 F.R.D. 515, 517-18 (D.Colo.1983);
 
 Miles v. Bell Helicopter,
 
 385 F.Supp. 1029, 1032-33 (N.D.Ga.1974);
 
 Thomas Organ Co. v. Jadranska Slobodna Plovidba,
 
 54 F.R.D. 367, 372, (N.D.Ill.1972);
 
 Hawkins v. District Court,
 
 638 P.2d 1372, 1378-79 (Colo.1982);
 
 Conley v. Graybeal,
 
 315 A.2d 609, 610 (Del.Super.1974);
 
 Henry Enterprises v. Smith,
 
 225 Kan. 615, 592 P.2d 915, 920 (1979).
 
 See generally
 
 Woodward,
 
 Insurance Companies and Work Product Immunity Under Indiana Trial Rule 26(b)(3): Indiana Adopts a Fact-Sensitive Approach,
 
 19 Ind.L.Rev. 139, 141-42 (1986). Under this rule, unless the insurer’s investigation has been performed at the request or under the direction of an attorney, the materials resulting from the investigation are
 
 “conclusively presumed
 
 to have been made in the ordinary course of business and not in anticipation of litigation.”
 
 Henry Enterprises,
 
 592 P.2d at 920 (emphasis added). The court in
 
 Hawkins
 
 stated the rationale for this rule as follows:
 

 Because a substantial part of an insurance company’s business is to investigate claims made by an insured against the company or by some other party against an insured, it must be presumed that such investigations are part of the normal business activity of the company and that reports and witness’ statements compiled by or on behalf of the insurer in the course of such investigations are ordinary business records as distinguished from trial preparation materials.
 

 638 P.2d at 1378. The court also noted:
 

 The logical absurdity of the plaintiff's position is that, under its theory, the amendments to the discovery rules, which were believed to be a liberalization of the scope of discovery, would be a foreclosure of discovery of almost all internal documents of insurance companies relating to the claims of insureds. We do not believe that Rule 26(b)(3) was designed to so insulate insurance companies merely because they always deal with potential claims.
 

 Id.
 
 (quoting
 
 Thomas Organ Co.,
 
 54 F.R.D. at 373).
 

 A second position, taken by a minority of courts, is that virtually all insurance carrier investigations are made in anticipation of litigation and, thus, an insurer’s files fall within the ambit of Civil Rule 26(b)(3).
 
 See Almaguer v. Chicago, Rock Island & Pacific Railroad,
 
 55 F.R.D. 147, 148 (D.Neb.1972);
 
 Ashmead v. Harris,
 
 336 N.W.2d 197, 201 (Iowa 1983);
 
 Firemen’s Fund Insurance v. McAlpine,
 
 120 R.I. 744, 391 A.2d 84, 89-90 (1978). According to these courts, all statements and information secured by an insurer, after an occurrence which might give rise to a claim against it or its insured, are protected from discovery unless “substantial need” and “undue hardship” can be shown.
 
 See Almaguer,
 
 55 F.R.D. at 149;
 
 Ashmead,
 
 336 N.W.2d at 201;
 
 McAlpine,
 
 391 A.2d at 89-90. Exemplifying the rationale of this rule is the Iowa Supreme Court’s reasoning in the
 
 Ashmead
 
 case:
 

 In our litigious society, when an insured reports to his insurer that he has been involved in an incident involving another person, the insurer can reasonably anticipate that some action will be taken by the other party. The seeds of prospective litigation have been sown, and the prudent party, anticipating this fact, will begin to prepare his case. Although a claim may be settled short of the instigation of legal action, there is an ever-present possibility of a claim’s ending in litigation. The recognition of this possibility provides, in any given case, the impetus for the insurer to garner information regarding the circumstances of a claim.
 

 336 N.W.2d at 201 (quoting
 
 McAlpine,
 
 391 A.2d at 89-90).
 

 In the instant case, the parties take diametrically opposed views as to what constitutes the best position on this issue. In short, Langdon argues for adoption of the majority rule, Champion the minority. We think that the majority view represents the soundest approach.
 

 The minority rule, we believe, is flawed because it presumes too much. Simply be
 
 *1007
 
 cause an event has occurred which may require an insurer to provide payments under its contract with an insured does not automatically transform an insurer’s activities into preparation for litigation. An insurance company routinely investigates possible claims whether or not there is any possibility of litigation, and we do not believe that Civil Rule 26(b)(3) was intended to insulate insurers from discovery merely because they regularly deal with potential claims. The minority rule also improperly relieves insurers and their insureds of a substantial portion of the obligations of discovery imposed on parties generally, obligations that are designed “to insure that the fact finding process does not become reduced to gamesmanship that rewards parties for hiding or obscuring potentially significant facts.”
 
 Henry Enterprises,
 
 592 P.2d at 920 (quoting
 
 Thomas Organ Co.,
 
 54 F.R.D. at 373). Indeed, under the minority rule, hardly any document authorized by or for an insurer is discoverable without the showing of substantial need and undue hardship required by Rule 26(b)(3). Such a rule clashes with our long established policy of encouraging liberal discovery to facilitate ascertainment of the truth.
 
 [13]
 

 See, e.g., McKibben,
 
 667 P.2d at 1231;
 
 Beaumaster v. Crandall,
 
 576 P.2d 988, 995-96 (Alaska 1978);
 
 Van Alen,
 
 536 P.2d at 787;
 
 Harpster,
 
 392 P.2d at 23-24.
 

 Thus, we hold that materials contained in an insurer’s files shall be conclusively presumed to have been compiled in the ordinary course of business, absent a showing that they were prepared at the request or under the supervision of the insured’s attorney. Prior to such attorney involvement, materials held by insurers are subject to discovery without regard to any work product restrictions.
 
 [14]
 

 Turning to the facts in the case at bar, it would appear that all of the materials requested in this case were prepared prior to any involvement of counsel.
 
 [15]
 
 However, the court below made no specific finding on the issue, and we cannot say with complete certainty that there are no documents which might qualify for work product protection under the standard we announce today. Accordingly, we REVERSE the trial court’s order denying Langdon’s motion to compel and REMAND with instructions that the court order production of all materials not prepared at the request or under the supervision of an attorney for Champion.
 

 [1]
 

 . For the purposes of this appeal, the terms insurance adjustor, insurance company and insurer will be used interchangeably.
 

 [2]
 

 .Alaska R.Civ.P. 26(b)(1) provides in part:
 

 Parties may obtain discovery regarding any matter, not privileged which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party.... It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
 

 [3]
 

 . Because the attorney-client privilege protects only "communications” from the client, we are concerned here only with those portions of the insurer’s file which contain statements made by Champion.
 

 [4]
 

 . Alaska R.Evid. 503(b) provides in part:
 

 A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1)
 
 *1002
 
 between himself or his representative and his lawyer or his lawyer's representative, or ... (4) between representatives of the client or between the client and a representative of the client....
 

 [5]
 

 . Alaska R.Evid. 503(a) provides in part:
 

 (2) A representative of the client is one having authority to obtain professional legal services and to act on advice rendered pursuant thereto, on behalf of the client.
 

 [[Image here]]
 

 (4) A representative of the lawyer is one employed to assist the lawyer in the rendition of professional legal services.
 

 [6]
 

 . We have, however, considered the protectability of "eyewitness statements" taken by insurers under the work product doctrine. We have generally found these to be discoverable.
 
 See Van Alen v. Anchorage Ski Club,
 
 536 P.2d 784, 787 (Alaska 1975);
 
 Miller v. Harpster,
 
 392 P.2d 21, 23-24 (Alaska 1964).
 
 See also American National Watermattress v. Manville,
 
 642 P.2d 1330, 1332 n. 1 (Alaska 1982) (noting that these work product decisions are not controlling as to application of the attorney-client privilege).
 

 [7]
 

 .In a similar vein, the Kentucky Supreme Court remarked:
 

 When a person has had an automobile accident that may result in litigation he would normally confide in counsel. If, however, he is insured, he has paid an insurance company to exercise that choice for him. He should not be penalized for his prudence in that respect.
 

 Asbury,
 
 589 S.W.2d at 217.
 

 [8]
 

 . This point was perhaps best expressed by Chief Justice Seiler of the Missouri Supreme Court who recently observed in dissent:
 

 I have serious doubts about the advisability of making any statements taken by an insurance adjuster immune from discovery. Automobile liability insurance companies and insurance companies in general are in the business of insuring persons, firms, and corporations against loss and liability from a variety of sources. Investigation of claims of all sorts is a matter of routine by insurance companies. It is done when a claim is reported, regardless of whether there is a probability of litigation. Further, it is well known that only a small fraction of claims involve litigation. The vast majority are settled without litigation and without lawyers. When an insurance adjuster takes a statement from an insured for an insurance company, he is doing no more than performing the routine business of the insurance company.
 

 State ex rel. Cain,
 
 540 S.W.2d at 58 (Seiler, C.J., dissenting) (footnote omitted).
 
 Accord Thomas,
 
 634 P.2d at 336-38 (Rose, C.J., dissenting).
 

 [9]
 

 . Champion gave his statement on September 11, 1985. Langdon filed suit on July 9, 1986 and the case was assigned to counsel on July 16, 1986. There is no legal significance to the fact that Champion’s recorded statement was not actually transcribed until August 12, 1986.
 

 [10]
 

 . In
 
 Hickman,
 
 the plaintiff had attempted to discover the statements of witnesses and other relevant information the defendant’s attorney had prepared with an "eye” towards litigation. 329 U.S. at 498-99, 67 S.Ct. at 387, 91 L.Ed. at 455-56. While examining the scope of discovery questions, the Supreme Court explained that discovery rules were to be accorded broad and liberal treatment. Trials were no longer to be carried on in the dark; instead, the goal of discovery was to insure mutual knowledge of all relevant facts.
 
 Id.
 
 at 501, 507, 67 S.Ct. at 389, 392, 91 L.Ed. at 457, 460. The Court stressed, however, that it was necessary to maintain certain restraints on bad faith, irrelevant, and privileged inquiries in order to insure the just and fair resolution of disputes. Accordingly, the Court held that an attorney’s "work product,” although relevant and not privileged, was discoverable only upon a showing of "good cause.”
 
 Id.
 
 at 512, 67 S.Ct. at 394, 91 L.Ed. at 463.
 

 [11]
 

 .
 
 See supra
 
 note 2.
 

 [12]
 

 . Alaska R.Civ.P. 26(b)(3) provides in part: Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party’s representative (including his attorney, consultant, surety, indemnitor, insurer or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation.
 

 [13]
 

 .As we observed in
 
 Harpster
 
 over two decades ago:
 

 The broad policy of all of our rules permitting discovery is to eliminate surprise at the trial and to make it convenient for the parties to find and preserve all available evidence concerning the facts in issue, thereby encouraging the settlement or expeditious trial of litigation.... Counsel have been retained by their clients to bring about an early favorable end to the litigation. They do not acquire property rights in the contents of the written statements they obtain.
 
 Experience has proved that the ends of justice are more likely to be served by liberal rules of discovery requiring full disclosure of all unprivileged relevant matter.
 
 No purpose of the rule is to reward diligent counsel in a manner that could result in the suppression of knowledge of relevant facts.
 

 392 P.2d at 23-24 (emphasis added).
 

 [14]
 

 . We note, however, that such materials remain subject to other applicable discovery provisions. Thus, for example, while the mental impressions, conclusions, opinions, or legal theories contained in an adjustor's files may not be protected under the work product doctrine, they may nonetheless be subject to challenge under Rule 26(b)(1) in appropriate cases.
 
 See Smedley v. Traveler’s Insurance,
 
 53 F.R.D. 591, 592 (E.D.Tenn.1971) (insurance company’s inter-office memoranda containing expressions of opinion as to liability and settlement value of case were neither admissible at trial nor reasonably calculated to lead to discovery of admissible evidence);
 
 see also Tronitech, Inc. v. NCR Corp.,
 
 108 F.R.D. 655, 655-56 (S.D.Ind.1985).
 

 [15]
 

 . This is particularly true of the statement given by Champion, which was recorded almost a year before Champion’s counsel was officially retained by the insurer.
 
 See supra
 
 note 9.