**LANTEX CONSTRUCTION COMPANY et al., Appellants,**

v.

**John LEJSAL, Appellee.**

No. 3534.

Court of Civil Appeals of Texas.

Waco.

June 6, 1958.

Rehearing Denied July 10, 1958.

Baker, Botts, Andrews & Shepherd, Houston, for appellants.

Hill, Brown, Kronzer & Abraham, Houston, for appellee.

McDONALD, Chief Justice.

This is a damage suit for personal injuries. Parties will be referred to as in the Trial Court. Plaintiff John Lejsal instituted this action against the defendants Lantex Construction Company and its employees Patrick Duhon and Howard Champayne to recover damages for personal injuries received when he fell from a scaffold which was upset by a pickup truck driven by defendant Duhon. At the time of the accident plaintiff was working as a carpenter employed by Timber Structures, Inc., a sub-contractor to Lantex Construction Company. Plaintiff Lejsal received substantial personal injuries and was paid some $7,630 Workmen's Compensation insurance by St. Paul Mercury Indemnity Company, which carried Timber Structure's compensation. St. Paul Mercury Indemnity Company is also a plaintiff in this case, seeking to recover the amounts paid by it to Lejsal. Plaintiffs contended that the Scaffold upon which Lejsal was working was upset when defendant Duhon, in starting the pickup truck, jerked same with the rear bumper when starting, and that such was caused by negligence on the part of Duhon. Defendants contended that plaintiff Lejsal was guilty of contributory negligence in connection with the occurrence of the injury, and further, that the occurrence was the result of an unavoidable accident. Trial was to a jury, which, in answer to special issues, found that defendants were guilty of a number of acts of negligence proximately causing the accident; that plaintiff was not guilty of contributory negligence, and that defendant Duhon discovered the perilous position of plaintiff in time to avoid the accident. The

jury fixed plaintiff's damages at $70,000, and found that medical expense amounted to $1,250. Judgment was entered for plaintiffs on the verdict, and defendants appeal, contending:

1) That there was no evidence or insufficient evidence to support the submission of Issues 9, 10, 11, and 18 through 27 (which are some of the issues finding negligence and discovered peril against defendants).

2) That the answers to Issues 28 through 40 are so against the weight of the evidence as to be clearly wrong (which are the issues acquitting plaintiff of contributory negligence).

3) The Trial Court erred in excluding from evidence a written unsigned statement purportedly made by plaintiff and witnessed and signed by plaintiff's attorneys.

4) The Trial Court erred in excluding from evidence the testimony of one of plaintiff's attorneys concerning the written unsigned statement of plaintiff.

5 and 6) The Trial Court erred in admitting into evidence testimony concerning an electroencephalogram of plaintiff.

7) Plaintiff's attorneys made improper argument to the jury.

8) Plaintiff and wife wept and cried during the jury argument, which was calculated to arouse the prejudice and sympathy of the jury.

9) The jury was guilty of misconduct in that attorney's fees were injected into the discussion, and the foreman of the jury discussed matters not in evidence.

10) The $70,000 damages found is against the overwhelming weight and preponderance of the evidence and is excessive.

11) A new trial should be granted on the ground of newly discovered evidence.

Reverting to defendants' 1st and 2nd points, that there was no evidence or insufficient evidence to support certain of the findings of negligence and discovered peril against defendants and the findings acquitting plaintiff of contributory negligence— the jury found:

1) Defendant Duhon failed to make such an inspection of the position of the scaffold before moving the truck as would have been made by a person of ordinary prudence in the exercise of ordinary care.

2) That such failure was a proximate cause of the occurrence.

3) Defendant Duhon failed to keep such lookout for the scaffold as would have been kept by a person of ordinary prudence, etc.

4) That such failure was a proximate cause of the occurrence.

5, 6, 7 and 8) are similar findings against defendant Champayne.

9) Defendant Duhon guided the truck so as to cause it to contact the scaffold upon which plaintiff Lejsal was working.

10) That such was negligence.

11) That such was a proximate cause of the occurrence.

12) Defendant Duhon failed to warn plaintiff Lejsal immediately prior to the accident.

13) That such was negligence.

14) That such was a proximate cause of the occurrence.

15, 16 and 17) are similar findings against defendant Champayne.

18) Defendant Duhon operated the truck at a rate of speed in excess of the speed at which a reasonably prudent person, etc. would have operated same.

19) That such was a proximate cause of the occurrence.

20) Defendant Duhon failed to maintain such control over the truck as would have been maintained by a reasonably prudent person, etc.

21) That such was a proximate cause of the occurrence.

22, 23, 24, 25, 26, 27) That plaintiff Lejsal was in a position of peril, and that defendant Duhon discovered such position; and realized that Lejsal could not in reasonable probability extricate himself; in time to have avoided the occurrence; but failed to exercise ordinary care to avoid the occurrence; which was a proximate cause of the occurrence.

28) Plaintiff Lejsal, before the occurrence, did not move the scaffold into such position that it would be jarred upon the starting of the pickup truck.

31) Plaintiff Lejsal did not fail to keep a proper lookout for his own safety.

36) Plaintiff Lejsal did not fail to make a proper inspection of the scaffold before going upon it.

38) Plaintiff Lejsal did not go upon the scaffold when he knew or should have known that it was in such close proximity to the truck that it would be jarred upon the starting of the truck.

41) The occurrence was not the result of an unavoidable accident.

42) Plaintiff's reasonable and necessary medical bills were $1250.

43) $70,000 will reasonably compensate plaintiff for his injuries and damages (to include pain and mental anguish, past and future; loss of earnings, past and future).

The record before us is voluminous, consisting of some 1,200 pages of testimony. No complaint is made of the findings of negligence against defendants in Issues 1 through 8; complaint being levelled at the findings of negligence 9 through 21 and at the adverse findings on discovered peril in Issues 22 through 27; complaint is further made at the findings in Issues 28 through 40, which acquit plaintiff of contributory negligence. The factual situation before us is not too complex. Plaintiff Lejsal was a carpenter working for Timber Structures, Inc., which were subcontractors of defendant in the building of a large building. Plaintiff went upon a scaffold to perform his work. The scaffold was some eight feet above a concrete floor. Defendants Duhon and Champayne, who were employees of defendant Lantex Construction Company, were picking up trash in a pickup truck. The truck contacted the scaffold, upset it, causing plaintiff to fall on his head and neck some eight feet onto the concrete floor. Lejsal sustained substantial injuries from the fall. Some four witnesses testified concerning the facts of the accident, viz.: defendants Duhon and Champayne; plaintiff Lejsal; and a Mr. Boatwright. The issue narrowed as to whether the two defendants operating the pickup truck collecting trash were negligent in contacting the scaffold with the truck and upsetting it—and whether plaintiff Lejsal was guilty of the acts of contributory negligence ascribed to him and inquired of in the court's charge. We have, with utmost care, examined the record before us, as indeed it is our duty to do in the light of In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661, and conclude that the jury's findings on Issues 28 through 40 acquitting plaintiff of contributory negligence are not against the great weight and preponderance of the evidence. We think the evidence is more than ample to sustain the findings. We further find that there is ample evidence to sustain the jury's findings to Issues 9 through 27.

Defendants' 3rd and 4th points relate to the action of the Trial Court in excluding from evidence an unsigned typewritten statement purportedly made by plaintiff—and in excluding from evidence the testimony of one of plaintiff's attorneys concerning such statement.

The primary defense offered by the defendants was that plaintiff Lejsal was

guilty of contributory negligence in moving the scaffold near the truck, allowing the scaffold to be near the rear of the truck, and going upon the scaffold when he should have known that the scaffold was in such close proximity to the truck that it could be upset upon the starting of the truck. Plaintiff Lejsal testified that the pickup was not *"right by the scaffold"*. He then testified that he didn't remember· exactly where the pickup was when he went up on the scaffold but that the pickup wasn't tied to the scaffold. (He testified that he went around the scaffold before going upon it to lock the brakes on the wheels. It would have been physically impossible for Lejsal to have locked the brakes on the wheels and not have come into personal physical contact with the truck if it had been in the position it was immediately before the accident occurred.) Defendants then sought to introduce into evidence a typewritten *unsigned* statement as follows:

"State of Texas
"County of Harris

"Before us, the undersigned witnesses, on this 29th day of September, 1953, personally appeared John Lejsal, who after being duly sworn did depose and state:

" 'My name is John Lejsal. I am a white male, 38 years of age. I am married, and live with my family at 503 East Whitney Drive in Houston, Texas. I am employed at the Timber Structures Inc. of Dallas, Texas, as a carpenter, and was so employed as a carpenter on or about the 22nd day of September, 1953, at approximately 2:30 P.M., when I sustained an injury to my person which is described below.

" 'I was nailing some boards from a portable scaffle at 2302 Telephone Road in Houston, Texas, where we were building a building. As I have said before, I was on top of this portable scaffle, and there was another person on the scaffle with me. His name is R. J. King. There was a pickup truck in the building that was haul-

ing away trash, and this pick-up was being driven by a colored boy. I had my back away from this pick-up, but I have later learned that the truck was owned by the Lantex Company out of Dallas, Texas. *This scaffle that we were working on was very near the rear of the parked pick-up,* and when the driver of the pick-up returned and got in his truck, he did not look in back of the truck to see whether or not the scaffle was touching his truck; for when he started, some part of the pick-up caught on the scaffle that we were working from, and threw me violently off of the scaffle onto the ground * *.

" 'I have read this statement and it is true and correct to the best of my knowledge and belief.

" 'John Lejsal'
(Typed)
"Witness s/s W. W. Watkins
"Witness s/s Billy H. Ragan"

Defendants contended the statement, although unsigned, was admissible as a prior inconsistent statement of plaintiff, since he had testified that the scaffold was not right by the pick-up when he got onto it—and further testified that he didn't know exactly where the pickup was when he went onto the scaffold. The Trial Court refused to admit the statement into evidence.

Plaintiffs contend that the "statement" is inadmissible on the ground that it was not properly authenticated; that it is a privileged communication between plaintiffs Lejsal and St. Paul Mercury Indemnity Company, and that the instrument, if error, is in any event harmless.

The record reflects that after Lejsal was hurt an investigator for St. Paul Mercury Indemnity Company, which was the compensation carrier which paid Lejsal $7630 workmen's compensation for his injury, called on Lejsal while he was in the hospital. He was in traction; he could not use his arms and was under sedatives. While Lejsal was in this condition the investigator took the statement by asking-

Lejsal questions (partially from prior knowledge of the accident) and then, upon a nod or grunt from Lejsal, writing up the statement in his (the investigator's) own words. The statement was taken so that St. Paul might make an analysis of its third-party rights. Lejsal did not sign the statement—he could not—and the investigator taking same typed his name on the bottom of same. Lejsal's attorneys, who came into the hospital room while the statement was being taken, were asked to and did sign their names as witnesses. The statement made its way into the files of the plaintiff St. Paul Mercury Indemnity Company. Thereafter St. Paul and Lejsal as plaintiffs brought the instant suit to recover Lejsal's damages and the $7,630 that St. Paul had paid to Lejsal as workmen's compensation. The same attorneys represented both plaintiffs. Defendants' attorneys requested plaintiffs' attorneys to furnish them with all of the medical reports on Lejsal (whose injuries are substantial) in connection with settlement negotiations. Plaintiffs' attorneys did not have all of the medical reports and requested plaintiff St. Paul to let them have, for delivery to defendants' attorneys, the medical reports in their files. The statement sought to be introduced into evidence was amongst the medical reports delivered by plaintiff St. Paul Indemnity Company to its attorneys and was unintentionally and inadvertently delivered to defendants' attorneys who found it, had it photostated, said nothing about it, and returned it with the medical reports to plaintiffs' attorneys. It goes without saying that nothing came of the negotiations for settlement. Mr. Watkins, one of plaintiffs' attorneys and one of the witnesses on the instrument, was called to the stand out of the presence of the jury by defendants, and on voir dire testified that the investigator took the statement as outlined above; that Lejsal did not sign it; that Lejsal was under sedatives; that he, Watkins, signed his name as witness thereto.

Defendants say the Trial Court erred in refusing to admit the statement into evidence, and further, that the Trial Court erred in not admitting the testimony of Mr. Watkins (set out generally supra), one of plaintiffs' attorneys, concerning the taking of the statement.

██ The statement was not signed—was not sworn to—or otherwise properly authenticated. Moreover, it was taken by one of the plaintiffs in the instant case, for among other reasons, to analyze its third party rights. The statement as well as the matters testified to on voir dire by attorney Watkins concerning the statement, we believe are privileged communications. We fail to perceive error in the action of the Trial Court in refusing to admit the statement and testimony of attorney Watkins into evidence. However, if we be mistaken in the foregoing, then we say that the error (if any) was harmless. Counsel for defendants were permitted to interrogate plaintiff Lejsal as to whether he had made any statement to the effect that the truck was very near to the scaffold when he got upon it—and further were permitted to argue the matter to the jury. The matters involved were effectively before the jury. Further to all that has been said, however, the statement could only go to the issues of contributory negligence. Even if the jury had found plaintiff guilty of contributory negligence, the judgment would be the same since the issues of primary negligence on the part of defendant stand (some unassailed) and since the jury resolved the issues of discovered peril against the defendants.

██ Defendants' 5th and 6th points are levelled at the action of the Trial Court in not excluding testimony concerning an electroencephalogram made of plaintiff. The witness Peter Kellaway, an expert at the making of an electrical diagnostic test on an electroencephalogram, testified that he made such a test on plaintiff, and that it reflected brain damage. He further testified that he was not a neurosurgeon, and further, that he could not say what might have caused the brain damage, only that

his test reflected its presence. The evidence was admitted toward the close of the trial at a time when plaintiff expected to put on a neurosurgeon to connect up the finding of the electroencephalogram with plaintiff's injuries. The neurosurgeon was not obtainable on the day involved, the judge wanted to bring the trial to a conclusion, and so plaintiff rested without putting on the neurosurgeon. Defendants thereupon moved that all of the testimony relative to the electroencephalogram be stricken, such motion being overruled by the Trial Court. The gist of defendants' point here is that the evidence of the electroencephalogram should be stricken because its reflection of existing damage to plaintiff's brain was in no manner connected up with his injury. It is undisputed in the record that in the fall to the concrete plaintiff was rendered unconscious, and when found was foaming at the mouth. Plaintiff remained unconscious for some six hours. He testified he suffered severe headaches since the accident and had a substantial loss of memory. Dr. Brodsky testified (albeit prior to the evidence of the brain damage as disclosed by the electroencephalogram) that his headaches were either due to extreme nervousness, the occipital neuralgia arising from the neck injury, or from the cerebral concussion itself. Dr. Brodsky testified that each of these conditions was directly traceable to the accident, and the introduction of the electroencephalogram from a competent and qualified witness did no more than show compatibility with Dr. Brodsky's testimony. There was absolutely no evidence in the record of any prior mental or physical disorders which would cause the conditions described by Professor Kellaway. Consequently, the electroencephalogram having been identified as that of the plaintiff and offered by a competent witness, and there being supporting testimony that plaintiff had sustained a concussion in the fall, the jury were entitled to consider the testimony. It is not the law of Texas that in dealing with the present condition there must be an expert opinion that it was probably caused

by the accidental occurrence (unless it be in a malpractice case). Moreover, under the facts of the instant case there was sufficient evidence before the jury from which it could have concluded that the condition shown by the electroencephalogram was "probably caused" by the accidental occurrence.

Under Points 7 and 8 defendants complain that a new trial should have been granted because of certain arguments made by plaintiffs' counsel to the jury, and because of certain alleged "crying" or "weeping" by plaintiff and his wife during the jury arguments. Defendants contend that plaintiffs' counsel's argument was improper in that such argument informed the jury of the legal effect of their answers; argued matters outside the record; and appealed to the passion and prejudice of the jury.

Reverting to the matter of plaintiff and his wife weeping and crying during the argument of the case—this matter was gone into thoroughly on motion for new trial. The Trial Court, in his Findings of Fact and Conclusions of Law, says:

"That during jury arguments of counsel for plaintiffs, the plaintiff and his wife were observed to have been crying, but not audibly so and without accompanying noises or sobbing. In this connection, the sitting position of plaintiffs was such as that the jury would have had to have turned their attention from the arguing counsel to have observed any crying of the plaintiffs. The Court's observations in regard to any crying were stated into the record at the conclusion of Defendants' Motion for Mistrial made at the conclusion of plaintiffs' counsel's opening argument. Further, the Court did not observe any juror looking in the direction of either Mr. or Mrs. Lejsal on any occasion when they showed any evidence of crying. * * No harm resulted to the defendants from the minimal crying without dem-

onstration, of the plaintiff or his wife."

■ We have carefully examined the record and conclude that the Trial Court is sustained in his findings and conclusions relative to the weeping and crying of plaintiff and his wife.

As to the jury argument, the entire jury argument of counsel has been reported and is before this court. Defendants' objections are levelled at lengthy passages of the argument, which we feel would serve no useful purpose to detail here. Suffice it to say that where defendant objected, his objections were largely sustained, and appropriate instructions were given the jury. Where defendants objected "blanket fashion" to all of or large portions of plaintiffs' argument, the Trial Court offered to consider any special instructions the defendants might present. None were presented.

■ Our Supreme Court has held that before a judgment is reversed because of argument of counsel, two things must appear: 1) The argument is improper, 2) it must be such as to satisfy the reviewing court that it was reasonably calculated to and probably did cause the rendition of an improper judgment in the case. "Probably" is defined in the dictionary as meaning: "in a probable manner". "Probable" is said to mean: "having more evidence for than against; supported by evidence which inclines the mind to believe but leaves some room for doubt; likely." Aultman v. Dallas Railway & Ter. Co., 152 Tex. 509, 260 S.W.2d 596, 600; Clifton v. Lostutter, Tex.Civ.App., 268 S.W.2d 323; Lumbermen's Lloyds v. Loper, 153 Tex. 404, 269 S.W.2d 367; Rainey v. Mc-Millian, Tex.Civ.App., 271 S.W.2d 103.

■ Applying the foregoing rules to the argument of counsel as well as to the record as a whole in this case, we conclude that the jury would in all probability have entered the same verdict that was rendered whatever the argument of counsel.

Defendants' 9th Point complains of alleged jury misconduct in that: 1) the foreman of the jury communicated with the bailiff concerning the order of answering of the issues; 2) that the foreman improperly influenced the jury when he argued in effect that to give less than $90,000 would "be taking bread out of plaintiff's children's mouths"; and 3) that the jury mentioned attorney's fees.

All of the foregoing were very thoroughly gone into on motion for new trial. The Trial Court, in its Findings and Conclusions, finds that before all issues had been answered the foreman did go to the door and inquired of the bailiff if it were permissible to take up special issues out of order. The bailiff replied that he did not know but thought it would be all right. The jury did consider some of the issues out of order, but had answered all of the preceding issues before answering the damage issue. The Trial Court concluded that no harm resulted.

As to the statement by the foreman that if less than $90,000 be awarded it would be like taking bread out of plaintiffs' children's mouths, the Trial Court found that such statement was made while the jury were discussing generally how the evidence showed that plaintiff was substantially injured, and constituted nothing more than the juror's belief, based on the evidence before him, as to the condition of the plaintiff and his diminished capacity to earn and labor in the future.

As to the mention of attorney's fees, one of the jurors asked what the attorneys for plaintiff would get out of the recovery. The foreman and at least one other juror promptly told the inquiring juror that the matter was not in evidence and could not be considered by the jury. The Trial Court, in its Conclusions of Law, found that the mere mention of attorney's fees in the form of a question, which was promptly rebuked, did not result in harm to the defendants, nor was it calculated to or did result in an improper verdict.

In order to justify the Trial Court's granting of a new trial on the ground of alleged jury misconduct: 1) such misconduct must be proved; 2) the testimony received or the communication made must be material; 3) it must reasonably appear that probable injury resulted to the complaining party. Rule 327, Texas Rules of Civil Procedure; Crawford v. Detering Co., 150 Tex. 140, 237 S.W.2d 615; Menefee v. Gulf, C. & S. F. Ry. Co., Tex.Civ. App., 181 S.W.2d 287; Swaim v. Teasley, Tex.Civ.App., 249 S.W.2d 674; St. Paul-Mercury Indemnity Co. v. Bearfield, Tex. Civ.App., 296 S.W.2d 956, W/E Ref. NRE.

Whether or not misconduct of jury occurred is a question of fact, and when the evidence on the alleged acts of misconduct is conflicting, the Trial Court's finding is final and binding on the reviewing court. White Cabs v. Moore, 146 Tex. 101, 203 S.W.2d 200. Since the Trial Court filed Findings of Fact, and since a careful review of the record reflects that such facts are supported by the evidence, such findings are binding on this court.

Whether the matters complained of be harmful and whether injury resulted therefrom is a question of law for the court. Under Rule 327 T.R.C.P., the party asserting misconduct has the burden of proving that the alleged misconduct occurred, and also of showing that such misconduct probably resulted in injury to him. Vol. 7 Tex.Jur. 10 Yr. Supp., p. 581, Sec. 51a.

In determining whether probable injury resulted to the movant, the court will examine the entire record in the case, including all of the pleadings, and all the evidence heard on the motion for new trial and that heard on the main trial.

A slight reference to an improper matter by a juror is not such misconduct as to necessitate a reversal, and this is especially true where the offending juror was promptly rebuked by the other jurors.

White Cabs v. Moore, 146 Tex. 101, 203 S.W.2d 200; Walker v. Thompson, Tex. Civ.App., 287 S.W.2d 556, W/E Ref. NRE; Swaim v. Teasley, Tex.Civ.App., 249 S.W.2d 674; Davis v. Younger, Tex. Civ.App., 260 S.W.2d 637, W/E Ref. NRE; Hatch v. Sallas, Tex.Civ.App., 263 S.W.2d 610; Sproles Motor Freight Lines v. Long, 140 Tex. 494, 168 S.W.2d 642; St. Paul Mercury Indemnity Co. v. Bearfield, Tex.Civ.App., 296 S.W.2d 956, W/E Ref. NRE.

After a careful examination of the entire record, we conclude that the alleged jury misconduct complained of was not material, and that it does not reasonably appear that probable injury has resulted to defendant. Moreover, we cannot say that the Trial Judge abused his discretion in overruling defendants' motion for new trial.

Defendants' 10th Point is that the $70,000 damages awarded by the jury is against the great weight and preponderance of the evidence and is excessive. We have closely examined the record and conclude that the verdict is not against the great weight and preponderance of the evidence; that the evidence is more than ample to support the verdict; and that the award is not excessive. Under the evidence before us the jury could have awarded plaintiff a considerably larger sum than it did.

By its 11th and last Point defendant contends it should be given a new trial on the ground of newly discovered evidence. The newly discovered evidence was Herbert Coleman, the Claim Adjuster for St. Paul Mercury Company, who prepared the unsigned statement from the interview with plaintiff in the hospital. Here again this matter was gone into very thoroughly on motion for new trial. The Trial Court found that defendants were told of Coleman's name and did not use diligence in procuring his testimony. We do not think the Trial Court has erred in this regard.

From what has been said, it follows that all of defendants' points and the contentions thereunder made are overruled, and the judgment of the Trial Court is affirmed.

HALE, J., did not participate in the consideration or disposition of this cause.