Charles Lambíase, J.
The plaintiff moves ‘ ‘ for an order pursuant to Section 3101 of the Civil Practice Law and Buies requiring the defendant to disclose and produce for the examination and discovery of the plaintiff herein the statement of Miss Georgia Babcock taken from her by persons on behalf of the defendant herein, and the statement of William H. Jackson taken from him by the persons on behalf of the defendant herein in accordance with facts set forth in the annexed affidavit, and now in the possession and control of the defendant, and for such other, further, and different relief as may seem just and equitable in the premises.” (Notice of Motion.)
Subsequent to the commencement of this action and while it was progressing through the courts on appellate matters (17 A D 2d 694, revd. 12 N Y 2d 473), defendant, William H. Jackson, died. His death occurred in the month of October, 1961 from causes unrelated to the accident. His surviving wife, Mabel B. Jackson, was appointed executrix of his estate in October of 1961 and was thereafter substituted as party defendant herein.
On the return date of the motion, defendant’s attorney stated that there was no objection to furnishing to the plaintiff’s attorney a copy of plaintiff’s statement (CPLB, § 3101, subd. [e]), but that there was objection to furnishing a copy *758 of the statement taken from decedent William H. Jackson during his lifetime.
Plaintiff and defendant were involved in an automobile accident in Canada, plaintiff being a passenger and deceased defendant being the owner and operator of the car. It was a one-car accident. Shortly after the accident occurred, it was investigated by an insurance adjustment bureau of Kingston, Ontario, Canada, hereinafter called Adjustment Bureau. . This bureau had been retained by someone acting on behalf of the Boston-O-Colony Insurance Company which insurance company represents the defendant. In conjunction with this investigation, the Adjustment Bureau procured statements of the occurrence or accident from both the defendant, William H. Jackson, now deceased, and from the plaintiff, Georgia W. Babcock. At the time that these statements were taken, there was no action pending between the parties, nor, it is claimed, was any action contemplated on the part of the plaintiff. The statement from plaintiff was taken from her, it is claimed, while she was still a patient at the Kingston General Hospital, at a time when she was not represented by counsel nor able to get the advice of a lawyer and before she had any idea of the extent and of the permanency of her injuries resulting from the accident. The statement of decedent, William H. Jackson, was taken several days after the accident at the office of the Adjustment Bureau at Kingston, Ontario, Canada. It is alleged and not contradicted that the statements are intact, and that copies are in the possession of those who took them.
One of the attorneys for the plaintiff states in his affidavit submitted herein: that he has conducted an extensive investigation of the accident in an effort to assemble evidence for the trial; that the accident was investigated by the Ontario Provincial Police shortly after its occurrence; that the investigating officer made measurements and extensive observations at the scene of said accident; that said police officer has stated that he had conversations with the decedent, William H. J ackson, and that he is able to recall most of the substance of these conversations but that he has since mislaid his notes and has been unable to locate them despite diligent search; that said police officer since said accident has severed his connections with the Ontario Police and has taken employment elsewhere, and that insofar as deponent has been able to learn, the investigation by the Ontario Provincial Police did not disclose that there were any eyewitnesses to the accident other than the immediate parties involved.
*759 Involved herein is the construction of section 3101 of the Civil Practice Law and Buies which became effective September 1, 1963. The 1957 Beport of the Temporary Commission of the Courts (N. Y. Legis. Doc., 1957, No. 6 [b], p. 117 et seq.; see, also, Senate Bill, Jan. 6, 1960, Int. No. 27, Pr. No. 27) proposed inter alia:
“ Buies — Title 34. Disclosure.
“A. General Provisions.
‘1 34.1 Scope of disclosure.
“ (a) Full disclosure required. Except as otherwise specifically provided in these rules, there shall be full disclosure before trial of all relevant evidence and all information reasonably calculated to lead to relevant evidence.
“(b) Privileged matter. Privileged matter shall not be obtainable.
“ (c) Attorney’s work product; material prepared for litigation. The following shall not be obtainable unless the court finds that withholding it will result in injustice or undue hardship:
‘ ‘ 1. the work product of an attorney; and
‘ ‘ 2. any opinion of an expert prepared for litigation and any writing or thing created by or for a party or his agent in preparation for litigation.” (Emphasis supplied.)
At page 120 of the Tentative Draft of said 1957 report appears this note: “The advisory committee rejected as impractical the possibility of distinguishing between attorneys regularly retained as investigators of accidents by public utilities and insurance companies and those assigned to particular matters after litigation has begun or been threatened. Presumably, even the lawyer hired for routine investigations will shape his inquiry and report by what he considers to be relevant in view of some legal theory. For similar reasons, reports prepared by a layman primarily for use by attorneys in litigation are exempt. 'Whether an internal business report of an accident, for example, is designed for use in litigation or for use by management in disciplining employees, avoiding future accidents, or making required governmental reports may be a close question best left to the courts. ’ ’ (Emphasis .supplied.)
The proposed provision (c) above set forth would have exempted attorneys’ work product and material prepared for litigation from disclosure “ unless * * * withholding it will result in injustice or undue hardship In essence, this was a restatement of the rule laid down by the United States Supreme *760 Court in Hickman v. Taylor (329 U. S. 495) that the work product of an attorney in preparation for. litigation shall not be the subject of compulsory disclosure unless there be adequate showing of “ good cause.”
The present statute, section 3101 of the Civil Practice Law and Eules, continues the proposed statute and insofar as subdivisions (c) and (d) are concerned reads as follows:
“ (c) Attorney’s work product. The work product of an attorney shall not be obtainable.
“ (d) Material prepared for litigation. The following shall not be obtainable unless the court finds that the material can no longer be duplicated because of a change in conditions and that withholding it will result in injustice or undue hardship:
‘ ‘ 1. any opinion of an expert prepared for litigation; and
‘1 2. any writing or anything created by or for a party or his agent in preparation for litigation.”
“ There is a limited number of statutory privileges. They are absolute in the sense that, even in matters involving public justice, a court may not compel disclosure of confidential communications thus made privileged. They relate to confidential communications between husband and wife, between attorney and client, between physicians, dentists, nurses and their patients, and between clergymen and communicants (Civ. Prac. Act, §§ 349-354 [C’PLE, §§ 4502, 4503, 4504, 4505 and 4513]; People v. Shapiro, 308 N. Y. 453). * * * In addition to the statutory, there is quite another kind of privilege recognized in the courts. This privilege attaches to confidential communications between public officers, and to public officers, in the performance of their duties, where the public interest requires that such confidential communications or the sources should not be divulged. [Citing cases.] ” (People v. Keating, 286 App. Div. 150, 152-153.)
It would seem that there is some legislative clarification that will be required in relation to .subdivisions (c) and' (d) afore-, said for subdivision (c) provides for total protection from disclosure for the 1 ‘ Attorney’s work product ”. Yet any writing created by or for a party or his agent in preparation for litigation, which falls under paragraph 2 of subdivision (d) “ shall not be obtainable unless the court finds that the material can no longer be duplicated because of a change in conditions and that withholding it will result in injustice or undue hardship.” We are assuming, although it is not stated in the papers, that the statement of the deceased (disclosure of which is being *761 sought) was signed, for to be subject to inspection the document or paper must itself be evidence. A statement signed by a party may be received in evidence as an admission. (Whatley v. Colbert, 28 Misc 2d 857.)
The question as to what constitutes the work product of an attorney has been touched upon by New York courts and in most, if not all cases, the case of Hickman v. Taylor (329 U. S. 495, 511), hereinbefore mentioned, has been the basis of the decisions. In that case, the court, considering the extent to which a party may inquire into the oral and written statements of witnesses or other information secured by an adverse party’s counsel on the course of preparation for possible litigation after a claim has arisen, said, among other things: ‘ ‘ Proper preparation of a client’s case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients’ interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways — aptly though roughly termed by the Circuit Court of Appeals in this case as the ‘ work product of the lawyer.’ Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney’s thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.” There is a distinction in a statement taken by an attorney or his agent in preparation for trial and a statement taken by a claim agent or a claim adjuster employed by a company in the course of a routine investigation. That circumstance alone is a distinguishing factor. The attorney or his agent, in taking a statement, is preparing his case and is working on a legal theory. Contrary to this, claims agents are making routine investigations for the company’s records and are not preparing only for trial. The statements taken by these men are of prospective plaintiffs or defendants or of witnesses. In Hughes v. Pennsylvania R. R. Co. (7 F. R. D. 737 [U. S. Dist. Ct., E. D. N. Y, 1948]) the court framed the above distinction as follows: “What an attorney does to prepare his client’s cause for trial, and what *762 a Claim Agent does for Ms employer prior to institution of a lawsuit, and which may never he embodied in a lawyer’s file, are thoug'ht to be diverse products. ’ ’ The attorney’s statements, being of a professional nature, and made in the preparation of his case for trial, should be immune from discovery, and inspection.
The underlying policy of disclosure proceedings is set forth under subdivision (a) of section 3101 of the Civil Practice Law and Rules. We think that the statement of the defendant taken herein is not protected under subdivision (c) of section 3101 of the Civil Practice Law and Rules as an “ Attorney’s work product.” Having determined that, is it protected under paragraph 2 of subdivision (d) of said section as being “ any writing or anything created by or for a party or his agent in preparation for litigation.” We think not. However, assuming arguendo and for that purpose only that it be classified as such, we are of the opinion that it is obtainable since we find that the material therein contained may no longer be duplicated because of a change in conditions (namely, the death of defendant William H. Jackson) and that withholding it would result in injustice or undue hardship to plaintiff.
In the preparation of this memorandum, the following have been of assistance: Weinstein-Korn-Miller, New York Civil Practice; Cataldo v. County of Monroe (38 Misc 2d 768 [Macken, J.]); Schulgasser v. Young (25 Misc 2d 788 [Catalano, J.], app. dismd. 12 A D 2d 994); Hollien v. Kaye (194 Misc. 821 [Bookstein, J.]) and Sturner v. Cook (16 A D 2d 735, mot. for lv. to app. to Ct. of Appeals den. 16 A D 2d 870). We have made extensive use of the record of the trial before Noonan, J., and briefs on trial in said last-mentioned case.
In light of the foregoing, we have concluded that the motion must be and hereby is, in all respects, granted.