GEORGE BRAKHAGE, AS FATHER AND NEXT FRIEND OF CRAIG BRAKHAGE, HIS SON, A MINOR, APPELLANT, V. KATHRYN GRAFF ET AL., APPELLEES.

206 N. W. 2d 45

Filed April 6, 1973. No. 38581.

Nelson, Harding, Marchetti, Leonard & Tate, Kenneth Cobb, and Richard H. Williams, for appellant.

Healey, Healey, Brown & Burchard, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

BOSLAUGH, J.

This was an action for damages arising out of an automobile accident. Craig Brakhage, who was 13 years old and will be referred to as the plaintiff, was riding his bicycle upon State Highway No. 4 in Plymouth, Nebraska, when he was struck by an automobile operated by Kathryn Graff, who will be referred to as the defendant. The action was brought by Craig's father, George Brakhage, as next friend. Larry Graff is the

husband of Kathryn Graff and was the owner of the automobile.

The jury returned a verdict for the defendants. The plaintiff appeals. The assignments of error relate to the ruling on two motions to produce and the instructions to the jury.

The accident happened at about 12:35 p.m., on July 5, 1968. The weather was clear and the highway was dry. Highway No. 4 is a 2-lane highway, approximately 22 feet wide, and is surfaced with blacktop. The highway runs east and west and is straight and level as it goes through Plymouth. The posted speed limit is 40 miles per hour.

The defendant testified that as she entered Plymouth from the west, her speed was below 40 miles per hour. She saw the plaintiff riding his bicycle east on the highway some distance away. As she approached, the plaintiff turned around and looked directly at her. She reduced the speed of her automobile and turned gradually to the left intending to pass the bicycle in the north lane of the highway. The bicycle was then close to the south edge of the south lane. As she started to pass the bicycle, it turned to the left directly in front of her. She applied her brakes but the right front corner of the automobile struck the left side of the bicycle near the rear axle of the bicycle. The point of impact was on or near the centerline of the highway. The plaintiff was thrown from the bicycle and was badly injured.

The defendant's automobile stopped with the right rear wheel on or near the centerline and the left front wheel approximately 6 feet from the north edge of the pavement. The bicycle was from 6 to 9 feet in front of the automobile and the plaintiff was lying on the pavement from 6 to 8 feet in front of the bicycle.

The defendant's automobile left skid marks 24 feet long. The mark made by the right wheels commenced in the right lane and ended near the centerline. The mark

made by the left wheels was entirely in the north lane. The damage to the bicycle indicated that the impact occurred while the automobile was braking. Based upon the skid marks, the speed of the defendant's automobile was estimated to be about 21 miles per hour at the beginning of the skid marks.

The plaintiff has no recollection of how the accident happened. There were no eyewitnesses to the accident other than the defendant.

At the time of the accident the defendant was insured against liability by the State Farm Mutual Automobile Insurance Company. The policy provided that the company would defend suits against the insured with attorneys selected and compensated by the company and make such investigation of claims and suits as it deemed expedient.

On July 8, 1968, Jon Grenseman, a field claims representative of the insurance company, interviewed the defendant and obtained a longhand statement signed by her. On approximately August 5, 1969, defense attorneys were employed by the insurance company in regard to this claim. On September 19, 1968, a second statement was obtained from the defendant.

On or before July 24, 1968, the plaintiff's father employed counsel in regard to the claim. This action was commenced on July 29, 1969. The defendant's deposition was taken by the plaintiff on February 10, 1970. The defendant stated, by affidavit, that she had never been contacted by any representative of the plaintiff.

On March 13, 1970, and again on February 7, 1972, the plaintiff filed motions for an order requiring the defendants to produce for inspection and copying "a statement" taken from the defendant. Both motions were overruled. These rulings are assigned as error.

Upon motion of any party showing good cause therefor the court may order the production of any document "not privileged." § 25-1267.39, R. R. S. 1943. Although the right to a discovery order depends upon a

showing of good cause and to some extent is within the discretion of the trial court, in deciding the issue in this case we consider only the question of privilege.

Although there is authority to the contrary, the weight of authority appears to support the rule that a statement by an insured to his liability insurer is privileged. "According to the weight of authority, a report or other communication made by an insured to his liability insurance company, concerning an event which may be made the basis of a claim against him covered by the policy, is a privileged communication, as being between attorney and client, if the policy requires the company to defend him through its attorney, and the communication is intended for the information or assistance of the attorney in so defending him." Annotation, 22 A. L. R. 2d 659. See, also, Heffron v. Los Angeles Transit Lines, 170 Cal. App. 2d 709, 339 P. 2d 567; Travelers Indemnity Co. v. Cochrane, 155 Ohio St. 305, 98 N. E. 2d 840; Gene Compton's Corp. v. Superior Court, 205 Cal. App. 2d 365, 23 Cal. Rptr. 250; Lantex Constr. Co. v. Lejsal (Tex. Civ. App.), 315 S. W. 2d 177; People v. Ryan, 30 Ill. 2d 456, 197 N. E. 2d 15; Vann v. State (Fla.), 85 So. 2d 133.

The fact that the statement was made to a field claims representative of the insurer who was not a lawyer is not controlling. The privilege extends to statements made to agents of an attorney. As stated in VIII Wigmore on Evidence, § 2301, p. 583: "It has never been questioned that the privilege protects communications to the *attorney's clerks* and his other agents (including stenographers) for rendering his services. The assistance of these agents being indispensable to his work and communications of the client being often necessarily committed to them by the attorney or by the client himself, the privilege must include all the persons who act as the attorney's agents."

The statements involved here were obtained in performance of the insurer's obligation to investigate and

settle or defend claims made against the defendants and were intended for the use of the attorneys selected by the insurer to represent the defendant.

The answer alleged that the plaintiff was negligent in failing to maintain a proper lookout and reasonable control over his bicycle. The plaintiff contends these allegations of contributory negligence should not have been submitted to the jury and the trial court should have given a requested instruction to the effect that the operator of a vehicle being overtaken has no duty to the vehicle to the rear until he has been made aware of it.

The defendant testified the plaintiff turned around and looked directly at her as she was approaching from the west. Then, as she started to pass the bicycle, it turned to the left directly in front of her. In view of this evidence, the instruction given was proper and the requested instruction was properly refused.

The plaintiff also complains of instruction No. 11 in which the trial court advised the jury that "any vehicle proceeding at less than normal speed of traffic at the time and place and under the conditions then existing shall be driven in the right hand lane then available for traffic or as close as practicable to the right hand curb or edge of the roadway except when overtaking and passing another vehicle proceeding in the same direction." The instruction was based upon section 39-746.01, R. S. Supp., 1972. The rule was applicable to the facts in this case and the instruction was a correct statement of the law.

The trial court further instructed the jury that one using the public highways has a duty not to move suddenly from a place of safety into a place of peril or danger "which peril or danger he saw or reasonably could have seen," unless he exercises ordinary care in so doing. The plaintiff contends the instruction was erroneous because the rule is limited to situations in

which the person "sees and is aware" of the peril or danger.

Under the evidence in this case the jury could find the plaintiff, after looking directly at the defendant, turned his bicycle to the left in front of the defendant who was overtaking him. It was the plaintiff's duty to look for traffic approaching from the rear before attempting a left turn across the highway. The defendant's automobile was a peril "he saw or reasonably could have seen." The instruction was not erroneous under the circumstances of this case.

The judgment of the District Court is affirmed.

AFFIRMED.

SPENCER, J., dissenting.

I respectfully dissent for the reason that I would follow the majority rule across the country and require the production of the statement given by Kathryn Graff to her insurance investigator. This statement was in no way a part of the work product of the defendant's attorneys. See, Wilson v. Borchard, 370 Mich. 404, 122 N. W. 2d 57; Alseike v. Miller, 196 Kan. 547, 412 P. 2d 1007; Babcock v. Jackson, 243 N. Y. S. 2d 715, 40 Misc. 2d 757; Jacques v. Cassidy, 28 Conn. Supp. 212, 257 A. 2d 29; Herbst v. Chicago, R. I. & P. R. R. Co. (Iowa), 10 F. R. D. 14.